IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No.  10-cv-02399-LTB

MICHAEL PARRISH,

        Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

        Defendant.

_____

ORDER

_____

Plaintiff Michael Parrish appeals from the Social Security Administration ("SSA") Commissioner's final decision denying his application for disability insurance benefits, filed pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401-433.  Jurisdiction is proper under 42 U.S.C. § 405(g).  Oral arguments will not materially aid in the resolution of this appeal.  After consideration of the parties' briefs, as well as the administrative record, I AFFIRM the SSA Commissioner's final order.

## I.  STATEMENT OF THE CASE

Plaintiff seeks judicial review of the Commissioner's decision denying his September 9, 2008, application for disability insurance benefits. [Administrative Record ("AR") 61]  The application was initially denied at the administrative level. [AR 61]  An Administrative Law Judge ("ALJ") subsequently conducted a hearing on April 5, 2010, and issued a written ruling on May 14, 2010, denying Plaintiff's application on the basis that he was not disabled between the date on which he alleges he became disabled and the date the ALJ rendered his decision. [AR 10-19]  On August

1

24, 2010, the SSA Appeals Council denied Plaintiff's administrative request for reconsideration, making the denial final for the purpose of judicial review. [AR 1]  Plaintiff timely filed his complaint with this court seeking review of the SSA Commissioner's final decision.

## II.  FACTS

Plaintiff was born on July 3, 1964, and was 44 years old on his alleged onset date and 45 years of age at the time of the ALJ's decision. [AR 28, 97, 105] He graduated from high school and has the equivalent of a couple years of college education obtained while in the military. [AR 28, 136]  His prior work history consists of cooking and short order cooking. [AR 132]  Plaintiff alleges that he became disabled on August 17, 2008, due to a plethora of physical ailments.  [AR 130-34] In order to be eligible for benefits, Plaintiff must prove that his disability began before December 31, 2013, the date through which he remained insured, pursuant to 20 C.F.R. §404.130. [AR 10] The relevant time period for determining disability is therefore August 17, 2008, through December 31, 2013. [AR 10, 29-30]

Plaintiff's medical records show a cornucopia of medical problems.  He has been diagnosed with diabetes, hypertension, and, at 6'3" and at times 486 pounds, morbid obesity. [AR 272, 308, 310] Plaintiff also has a history of mild depression, but this does not appear to affect his ability to perform basic workplace activities. [*see* AR 228, 229]

Plaintiff also has chronic back problems.  He had back surgery in August 2006: a L5-S1 fusion for spondylolisthesis. The surgery produced some initial success, and in November 2006, Plaintiff was able to return to his job as a cook full time. [AR 13, 317, 346] In January 2008, however, Plaintiff was still reporting back pain, along with a burning sensation and weakness in his legs. [AR 14, 274] An MRI of Plaintiff's lumbar spine taken in January 2008, interpreted by Dr.

2

Rothbar, showed the presence of mild degenerative disc disease with an equivocal left lateral L3-5 disc protrusion that did not product significant stenosis. [AR 14, 288] Doctors opined that the only way to remedy the problems was to perform another back surgery to extend his fusion. [AR 375] Due to his weight and young-age, however, doctors recommended pursuing other treatments. [AR 375] There does not appear to be any subsequent treatment of Plaintiff's back until September 10, 2008, the day after Plaintiff filed for disability. [AR 14]

In February 2008, Plaintiff slipped and fell at work, twisting his knee.  [AR 13, 249, 265] (It is unclear whether the accident was in late February or early March, as the record contains both. That distinction is immaterial here.)  He began experiencing daily sever, radiating pain in his knee as well as swelling, popping, locking, instability, weakness, and clicking. [AR 249, 265] He stopped working soon thereafter, in April 2008. [AR 14]  Plaintiff reported his back and knee problems to cardiologist Dr. Law in May 2008.  [AR 14, 245] Dr. Law's examination, however, focused on Plaintiff's cardiac condition.  Dr. Law did not find an underlying coronary disease. [AR 14, 245-46]

In May 2008, Plaintiff had his knee examined by orthopedic physician James Johnson. [AR 14, 240-51]  He relayed the symptoms explicated above to Dr. Johnson. [AR 249-51] Dr. Johnson treated Plaintiff's knee with an injection.  [AR 250] Reference to Plaintiff's back is absent from Dr. Johnson's notes. [AR 14, *see* 249-51]

An MRI in July 2008 showed that Plaintiff had a medial meniscal tear and a medial femoral condyle contusion. [AR 261] These findings led Plaintiff to have knee surgery in July 2008, performed by a Dr. Baxter, which consisted of an arthroscopy, medial meniscectomy, and a patella abrasion chondoplastly [AR 14, 254]

Plaintiff applied for Social Security Disability Insurance Benefits on September 9, 2008,

alleging that he had been disabled since August 17 of that year.  The next day, September 10, Plaintiff reported to his general phsyician, Dr. Weingart. [AR 14, 272] Plaintiff told Dr. Weingart that he wanted to discuss going on disability. [AR 14, 272]  Plaintiff made this request repeatedly to Dr. Weingart and to other physicians. [*See, e.g.*, AR 309, 312, 317]

Plaintiff saw Dr. Nelson on September 18, 2008, for persistent low back pain. [AR 14, 317] Dr. Nelson's notes describe that Plaintiff "state[d] that the reason for the visit is to obtain disability certification." [AR 14, 317] Dr. Nelson's notes further stated that  Plaintiff "was reluctant to admit, but did in fact admit, that he had improved following surgery." [AR 14, 317] Plaintiff still reported significant radiating back pain and associated numbness in his thighs, which "standing or sitting too long" exacerbated. [AR 317] Dr. Nelson noted that all of Plaintiff's assessed muscles in the lower and upper body tested as five out of five for strength. [AR 14, 319] He further noted that sensation was "intact to pinprick and light touch throughout the arms and legs with the exception of diminished pinprick and light touch sensation on the lateral aspect of both thighs." [AR 14, 319] Dr. Nelson recommended a CT scan of Plaintiff's low back and referred him to other specialists. [AR 317] He did not opine on Plaintiff's functional limitations or his disability status. [*See* AR 317-19]

Plaintiff next visited Dr. Baxter for a post-knee operation examination on September 22, 2008.  [AR 14, 254]   During that exam, Plaintiff told Dr. Baxter that "he has been having very minimal pain, occasional swelling." [AR 254] Dr. Baxter noted that the surgical site had "healed well, with no signs of abnormalities except for reduced flexion of the joint and occasional swelling." [AR 14, 254]

On October 9, 2008, Plaintiff underwent a physical and neurological exam by Andrew Davalt, a physician's assistant. [AR 15, 373-75] Mr. Davalt noted neurological findings generally

consistent with those Dr. Nelson found. [AR 15, *see* 373-75] He further noted that a new MRI, discogram, and x-rays had all been taken that month but that they showed no significant lumbar stenosis or abnormalities. [AR 374-75] Mr. Davalt also discussed the possibility of more surgery to extend Plaintiff's fusion but was concerned about the chances of success because of Plaintiff's habitus. [AR 15, 375] Plaintiff was referred to Dr. Castro for a second opinion [AR 375], but there are no reports from him in evidence.  Plaintiff's back pain complaints continued through 2008, 2009, and 2010, and were treated with various prescription medications. [AR, 272, 310, 325-30, 332]

Dr. Weingart's clinical records note that he prescribed Plaintiff OxyContin on October 28, 2008. [AR 14, 314] Those records also indicate that Plaintiff remained on narcotic medication therafter, including Morphine. [AR 314, 300-20]

On November 11, 2008, Dr. Hilty, a consultative physician, examined Plaintiff at Defendant's request. [AR 15] His report is the subject of Plaintiff's first issue on appeal and will be discussed in Part VI.A., *infra*.

Plaintiff then switched to the local VA Medical Center for his primary care on December 16, 2009. [AR 341] A musculoskeletal examination performed that day showed no focal motor or sensory deficits. [AR 16, 331] Dr. McMilliams, the examining physician, noted that Plaintiff's chronic pain was "moderately controlled at this point." [AR 337] He also opined that Plaintiff's chronic pain was related to Plaintiff's prior back problems and his obesity. [AR 337] He further noted that Plaintiff's obesity, in his opinion, caused and exacerbated multiple problems. [AR 337]

### III.  LAW

A five-step sequential evaluation process is used to determine whether a claimant is disabled under Title II of the Social Security Act, which is generally defined as the "inability to engage in

any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.§ 1382c(a)(3)(B); *see also Bowen v. Yuckert*, 482 U.S. 137, 137 (1987).

Step One is whether the claimant is presently engaged in substantial gainful activity. If he is, disability benefits are denied. *See* 20 C.F.R. § 404.1520. Step Two is a determination of whether the claimant has a medically severe impairment or combination of impairments as governed by 20 C.F.R. § 404.1520(c). If the claimant is unable to show that his impairment(s) would have more than a minimal effect on his ability to do basic work activities, he is not eligible for disability benefits. Step Three then assesses whether the impairment is equivalent to one of a number of listed impairments deemed to be so severe as to preclude substantial gainful employment. *See* 20 C.F.R. § 404.1520(d). If the impairment is not listed, he is not presumed to be conclusively disabled. Step Four then requires the claimant to show that his impairment(s) and assessed residual functional capacity ("RFC") prevent him from performing work that he has performed in the past. If the claimant is able to perform his previous work, the claimant is not disabled. *See* 20 C.F.R. § 404.1520(e) & (f). Finally, if the claimant establishes a *prima facie* case of disability based on the four steps discussed, the analysis proceeds to Step Five where the Commissioner has the burden of proving that the claimant has the RFC to perform other work in the national economy in view of his age, education and work experience. *See* 20 C.F.R. § 404.1520(g).

As relevant here, a claimant is required to establish that he became disabled prior to the expiration of his insured status. 20 C.F.R. § 404.130; *see also Potter v. Sec'y of Health & Human Servs.,* 905 F.2d 1346, 1347-48 (10th Cir. 1990).

## IV. ALJ's RULING

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2013.  He ruled that Plaintiff had not engaged in substantial gainful activity since his alleged onset date (Step One). [AR 12]  The ALJ also found that through the hearing date Plaintiff had the following severe medical impairments: status-post posteolateral fusion at L5-S1 in August 2006; status-post right knee surgery in July 2008; morbid obesity; diabetes mellitus; hypertension; and mild reactive airway disease (Step Two). [AR 12]  Because the ALJ determined that he did not have an impairment or combination of impairments that meets or medically equals a listed impairment (Step Three), the ALJ went on to assess Plaintiff's RFC. [AR 12]

The ALJ evaluated the evidence and found that from August 17, 2008, through August 31, 2009, Plaintiff had an RFC allowing him to perform a limited range of sedentary work. [AR 19] Specifically, Plaintiff could lift or carry 10 pounds occasionally; stand or walk a total of two hours, or sit a total of six hours in an eight-hour workday; and he required an allowance to alternate between sitting and standing every 60 minutes. [AR 13] He also could occasionally climb ramps or stairs but never ropes, ladders, or scaffolds. [AR 13] He could periodically balance, stoop, or crouch, and could frequently bend, but could not kneel or crawl. [AR 13]  The ALJ further found that as of September 1, 2009, Plaintiff had the same RFC as above except that he could stand or walk a total of four hours, instead of just two, in an eight-hour work day. [AR 13] This resulted in the finding that post September 1, 2009, Plaintiff could perform a limited range of light exertional work. [AR 19]  As a result of Plaintiff's RFC assessment, the ALJ found that he was unable to perform any of his past relevant work (Step 4).  [AR 18] The ALJ therefore proceeded to the fifth and final step.

The ALJ found that significant jobs existed in the national economy for Plaintiff given his

age, education, work experience, and RFC. [AR 19] These jobs included an order clerk and call out

operator. [AR 19] Thus, the ALJ denied Plaintiff's application because he was not under a disability

as defined by the SSA–from his alleged disability onset date through the date last insured–at Step

5 of the sequential evaluation process. [AR 19]  On review, the Appeals Council "found no reason"

to reconsider the ALJ's decision. [AR 1]

## V.  STANDARD OF REVIEW

My review here is limited to whether the final decision is "supported by substantial

evidence" in the record as a whole and whether the correct legal standards were applied.  *Williamson*

*v. Barnhart,* 350 F.3d 1097, 1098 (10th Cir. 2003); *White v. Barnhart,* 287 F.3d 903, 905 (10th Cir.

2001); *Qualls v. Apfel,* 206 F.3d 1368, 1371 (10th Cir. 2000).  My review of the factual findings is

to determine whether they "are based upon substantial evidence and inferences reasonably drawn

therefrom. If they are so supported, they are conclusive upon the reviewing court and may not be

disturbed."  *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970). "Substantial evidence"

is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005).  "It requires more than a scintilla, but

less than a preponderance."  *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004).

## VI. APPEAL

Plaintiff raises two issues on appeal. The first is that the ALJ failed to properly evaluate and

incorporate Dr. Hilty's opinions.  The second is that the ALJ failed to properly evaluate Plaintiff's

RFC with respect to a number of areas: pain, use of a cane, the side effects of prescribed medication,

obesity, and mental impairments.  I address these issues in turn.

### A. Dr. Hilty's Opinion

Dr. Hilty described Plaintiff as "very obese, friendly, and intelligent." [AR 290] His notes also reflect that Plaintiff claims to have been able to do "some house work and walk his dogs" and can "take care of himself as far as daily living." [AR 290] Under the "Physical Examination" section of his report, Dr. Hilty stated, *inter alia*, the following about Plaintiff: His height and weight were 75 inches and 411 pounds. [AR 290] Although his "gait [was] slow because of the back pain and he uses a cane," Plaintiff was able to "walk into [the] room, get up on the table, sit comfortably, and walk comfortably." [AR 290-91] He could do the finger-to-nose test, get up from his chair, and dress and undress. But he could not do heel-to-shin, tandem walking, walk on his toes or heels, hop, bend much, or squat. [AR 291] Dr. Hilty found tenderness in Plaintiff's lumbar area paravertebrally. [AR 292] Plaintiff's motor strength was five out of five in his arms and four out of five in his legs with no signs of atrophy or asymmetry of the muscles. [AR 292] Dr. Hilty noted signs of decreased sensation in the thighs bilaterally. [AR 292] Plaintiff's straight leg raising was five degrees on each side. Dr. Hilty's report also contained a separate, distinct section titled "Functional Assessment/Medical Source Statement," which states the following:

> The claimant can walk about 7 minutes at a time with his cane and then he gets the back pain. He can stand about 7 minutes at a time, similarly and the back pain. So, during an eight-hour workday it would be less than two hours that he could stand and walk, and he uses his cane for this of course. Sitting is such that he can sit about 10 minutes at a time and then the back acts up, so it would be less than two hours that he could sit off and on during the day. The claimant is able to lift 10 pounds occasionally, but he is limited because of his back. The claimant is able to use his hands and there are no limitations in using his arms.

[AR 292-93].

Dr. Hilty is the only acceptable medical source to opine any functional limitations. [AR 15] The ALJ, however, was "not persuaded by the limitations" Dr. Hilty found, other than the 10-pound

lifting limitation. [AR 15] The ALJ gave "little weight" to Dr. Hilty's report for these reasons:

> It's evident that the doctor reported the limitations given to him by the claimant rather than independently making an assessment as to what the claimant can do. This is indicated by the style of his narrative, e.g., "The claimant can walk [or stand] about 7 minutes . . . and then he gets the back pain". An independent opinion would not describe when the claimant gets his pain.  The standing and lifting limitations given by the doctor are more restrictive than what the claimant said he could do in written statements only two months earlier . . . . The doctor's limitation on sitting to 10 minutes at a time does not reasonably result from the objective medical findings of mild degenerative disease, and they appear to contradict his observation that the claimant sat comfortably on the examination table.  This limitation is also more restrictive than what the claimant said he could do at the hearing, i.e., 20-25 minutes and seems inconsistent with the claimant's written statement that he could drive or ride in a car. I also note there is no indication in Dr. Hilty's report that he reviewed any prior medical records.  His opinion as to the claimant's standing, walking, and sitting limitations is inconsistent with the overall weight of the evidence and is given little weight.

[AR 15-16 (internal citations omitted)] That the ALJ all but disregarded Dr. Hilty's report is crucial.  When making his disability determination, the ALJ relied heavily upon a vocational expert who testified at the Plaintiff's disability hearing. [AR 19] During the hearing, the ALJ asked the vocational expert to opine whether a hypothetical individual with the RFC that the ALJ ultimately found Plaintiff had–which differed from Dr. Hilty's report–could perform any jobs in the national economy. [AR 55-57] The vocational expert answered in the affirmative. [AR 55-57] When, however, Plaintiff's attorney asked the vocational expert whether a person with the functional limitations that Dr. Hilty's report contained could perform any jobs in the national economy, the vocational expert opined that such a person could not. [AR 58-59]

Plaintiff contends that whether the ALJ properly evaluated Dr. Hilty's report in rendering his determine is reversible error because the functional limitations contained in that report directed a finding of disabled. [*See* AR 58-59]  He argues that the ALJ's conclusion that Dr. Hilty's functional assessment derived from Plaintiff's self-assessment rather than an independent, objective

10

one is "mere speculation" and "is not supported by the evidence of record." He states that Dr. Hilty

"thoroughly observed and examined" him. These observations and exams showed that he has a

slow gait, could not perform heel to shin or tandem walking, and could not walk on his toes or

heels." Moreover, Dr. Hilty's physical examination also yielded that he has a decreased range of

motion in his lumbar spine and problems with his legs. "Based on these findings," Plaintiff asserts,

"Dr. Hilty, an examining medical doctor, opined that [I] ha[ve] the functional limitations" stated

in his report. Plaintiff also disputes that Dr. Hilty's report is inconsistent with Plaintiff's written

statements and hearing testimony. For the reasons below, I disagree with Plaintiff and conclude

that the ALJ's evaluation of Dr. Hilty's report is supported by substantial evidence.

I raise *sua sponte* the issue of whether Dr. Hilty is a treating or nontreating physician. This

is of great import because of the disparate weight accorded to each type of physician. With regards

to treating physicians, "[t]he well-established rule in this circuit is that the Secretary must give

substantial weight to the testimony of a claimant's treating physician, unless good cause is shown

to the contrary." *Frey v. Bowen*, 816 F.2d 508, 513 (10 th Cir. 1987) (citing *Turner v. Heckler*, 754

F.2d 326, 329 (10th Cir. 1985)). Rejecting or discounting a treating physician's opinion requires

"specific, legitimate reasons." *Miller v. Chater*, 99 F.3d 972, 976 (10th Cir. 1996). By contrast,

a non-treating physician's findings "based upon limited contact and examination are of suspect

reliability." *Frey*, 816 F.2d at 515. As a corollary, absent "thorough written reports or persuasive

testimony," a consultative physician's evaluation form is "not substantial evidence." *Id.*

It is not clear from the record whether Dr. Hilty is a treating or nontreating doctor. The ALJ

stated that Dr. Hilty was a "consultative physician," [AR 15] and the parties aver that he examined

Plaintiff "at the Commissioner's request." Without more, these descriptions do not clarify Dr.

11

Hilty's status.  *Compare Frey*, 816 F.2d at 513-15 (10th Cir. 1987) (distinguishing between "treating" and "nontreating" physicians and classifying those physicians who examine a claimant *at the government's request* as the latter), *with Broadbent v. Harris*, 698 F.2d 407, 412 (10th Cir. 1983) (also distinguishing between "treating" and "nontreating" physicians but classifying physicians who have treated a patient over a period of time *or who are consulted for purposes of treatment* as "treating" and physicians employed and paid by the government for the purpose of defending against a disability claim as "nontreating").  Both parties, however, postulate that Dr. Hilty is a treating physician by asserting that rejecting or discounting his report requires specific, legitimate reasons.  *See* Pl.'s Br. 7 (stating that in order to reject Dr. Hilty's report, the ALJ "must offer specific, legitimate reasons, supported by substantial evidence."), *and* Def.'s Resp. 13 ("An ALJ may reject or discount a physician's opinion when he sets forth specific, legitimate reasons for doing so.") (internal quotations and citations omitted).  While I raise this issue, I need not resolve it because assuming, as the parties do, that Dr. Hilty is a treating physician, I nevertheless conclude for the reasons below that the ALJ provided specific and legitimate reasons supported by a substantial evidence for according "little weight" to Dr. Hilty's report.  That decision is therefore not in error.  *See Frey*, 816 F.2d at 513-14, *and Richardson*, 402 U.S. at 401.

An ALJ must consider numerous factors when evaluating medical opinions. They include the length of the treatment relationship and frequency of the examination; the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; the degree to which the physician's opinion is supported by relevant evidence; consistency between the opinion and the record as a whole; whether or not the physician is a specialist in the area upon which an opinion is rendered; and other factors brought to the ALJ's

attention which tend to support or contradict the opinion.  *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); 20 C.F.R. § 404.1527(d) (2010).  An ALJ is not required to expressly discuss each of these factors.  *Oldham*, 509 F.3d at 1258 ("That the ALJ did not explicitly discuss all the § 404.1527(d) factors for each of the medical opinions before him does not prevent this court from according his decision meaningful review. Ms. Oldham cites no law, and we have found none, requiring an ALJ's decision to apply expressly each of the six relevant factors in deciding what weight to give a medical opinion.").  Nor will each factor be applicable in every case.  *Id.*

The ALJ cited a number of reasons for according Dr. Hilty's report "little weight."  The first was that he found that the functional limitations contained therein derived from Plaintiff's subjective assessment rather than an objective test.  An ALJ may properly reject or discount a physician's opinion where it appears to be based on a claimant's subjective medical complaints. *See, e.g.*, *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007); *see also White*, 287 F.3d at 907 (finding that "much of Dr. Fanning's assessment was based on Ms. White's subjective assertions rather than objective medical evidence" was a specific and legitimate reason for discounting the doctor's opinion).  Moreover, the kind of examination or testing performed–which would necessarily include the kind *not* performed–and the degree to which these limitations are supported by relevant evidence are two of the factors that the ALJ must consider when deciding the weight of a physician's report. *See Oldham*, 509 F.3d at 1258; 20 C.F.R. § 404.1527(d)(2)(i), (3).  This reason is therefore specific and legitimate.  To be clear, the ALJ did not reject Dr. Hilty's report wholesale.  Rather, he rejected only those functional limitations that Plaintiff could walk seven minutes before getting pain; that Plaintiff could stand seven minutes before pain onsets; and that Plaintiff could sit about 10 minutes at a time before "the back acts up."

The ALJ explained that the style of Dr. Hilty's narrative evinced those limitations derived from Plaintiff's subjective assessment rather than an objective medical one. [AR 15]  Nothing in the record militates against this conclusion–that is, nothing in my review of the record and the arguments establishes that the rejected limitations resulted from an objective medical test specifically designed to assess them (for example, by having Plaintiff walk on a treadmill and timing him until pain ensued).  Plaintiff rebuts that the ALJ's conclusion on this point is "mere speculation" because nowhere does the report explicitly state that the functional limitations therein were a product of Plaintiff's own subjective report.  But the burden of establishing those limitations fell on Plaintiff.  *See White*, 287 F.3d at 905 (explaining that prior to Step Five, the burden of proof is on the plaintiff). Plaintiff argues that Dr. Hilty performed a physical examination that included measuring the range of motion in his lumbar spine, a straight leg raising test, and testing the sensation in his thighs. And "[b]ased on *these* findings," he argues, "Dr. Hilty, an examining medical doctor, opined that [I] had the functional limitations stated above."  Pl.'s Mot. at 7 (emphasis added).  Plaintiff thus concedes that the doctor did not perform an objective test specifically designed to assess how long Plaintiff could stand, walk, and sit before pain onsets.

I note that it may be reasonable to conclude that the functional limitations in Dr. Hilty's report indeed resulted from objective medical evidence.  This, however, does not require me to reverse the ALJ's decision.  " 'The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.' "  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski*, 372 F.3d at 1200).  Indeed, I "may not displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice has the matter been before

14

it de novo." *Id.* (internal quotations omitted).

The ALJ also specified that he rejected most of the functional limitations in Dr. Hilty's report because he found them to be inconsistent with the overall weight of the evidence.  An ALJ may discount a medical opinion if it is inconsistent with other substantial evidence in the record. *See Castellano v. Sec'y of Health and Human Services*, 26 F.3d 1027, 1029 (10th Cir. 1994); *accord* 20 C.F.R. § 404.1527(d)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion").  Hence, rejecting those aforementioned portions of Dr. Hilty's report as inconsistent with the overall record is specific and legitimate.

The ALJ marshaled the following in support of this finding:   The standing and lifting limitations in Dr. Hilty's report are more restrictive than what Plaintiff reported in prior recent written statements. [*Compare* 292-93 (Dr. Hilty's report stating that Plaintiff could stand or walk seven minutes and sit 10 minutes, respectively, before pain onsets), *with* 176 (Plaintiff stating in written documents submitted in conjunction with his application for disability that he cannot sit, stand or walk for more than about 30 minutes at a time)]  Dr. Hilty's finding that Plaintiff could only sit pain-free for 10 minutes also does not reasonably result from the objective medical finding that Plaintiff has mild degenerative disc disease and appears to contradict both Dr. Hilty's statement that Plaintiff could sit comfortably and Plaintiff's own statement that he could ride or drive in a car. Similarly, the standing and sitting limitations in the report are incongruent with Plaintiff's own testimony at the hearing. [*Compare* AR 292-93 (Dr. Hilty's report stating that Plaintiff could stand or walk seven minutes and sit 10 minutes, respectively, before pain onsets), *with* AR 42 (Plaintiff testifying that he can walk three to five minutes, stand 10 to 15 minutes, and sit 20 to 25 minutes, respectively, before pain onsets.)]

15

In his reasoning for rejecting most of Dr. Hilty's functional limitations, the ALJ also noted that there was no indication that Dr. Hilty had reviewed any of Plaintiff's medical records. [AR 15] The ALJ may consider this when deciding what weight to accord a doctor's report, and it may vitiate that report. *See Frey*, 816 F.2d at 515 (concluding that a physician's report did not constitute substantial evidence because, *inter alia*, "[t]here is no indication of careful study of Frey's history or prior examinations"). This is thus a specific and legitimate reason. It is also supported by substantial evidence. Dr. Hilty's report indicates that he in fact did not review Plaintiff's medical records. [*See* AR 289 (stating "Office Visit" in the "Review of Records" section of the report)] Plaintiff does not argue to the contrary, nor is there evidence in the record suggesting otherwise.

As stated, the ALJ specified three legitimate reasons for discounting Dr. Hilty's report. The issue, then, turns to that whether decision was supported by substantial evidence. Importantly, I do not reweigh the evidence or substitute my judgment for the Commissioner's. *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1498, 1500 (10th Cir. 1992) (citation omitted). And, again, an ALJ's decision must be affirmed if it is supported by that amount of evidence, even if the court would have reached a divergent conclusion had it been reviewing the matter de novo. *See Lax*, 489 F.3d at 1084 ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.") (internal citations and quotations omitted)). Instead I assess whether there is "more than a scintilla" of evidence supporting the decision. *See Zoltanski*, 372 F.3d at 1200. I find that the evidence presented above, in its totality, is of such a quantity. Accordingly, that decision is not in error.

**B. The ALJ's RFC Evaluation**

Plaintiff's second contention is that the ALJ erred in evaluating his RFC.  More specifically, he argues that the ALJ improperly evaluated his pain, use of a cane, side effects of prescribed medication, obesity, and mental impairments.  I disagree with Plaintiff on all counts for the reasons explained herein.

An "RFC is what an individual can still do despite his or her limitations."  SSR 96-8p.  It "is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work- related physical and mental activities."  *Id.*  When making findings concerning a claimant's RFC, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.*

Once a claimant has established a medically determinable impairment that could reasonably be expected to cause his symptoms, including pain, an ALJ is to "consider all of the available evidence, including [the claimant's] medical history, the medical signs and laboratory findings and statements about how [the claimant's] symptoms affect [him]."   20 C.F.R. § 404.1529(a).  In so doing, the adjudicator must make a finding about the credibility of the claimant's statements about his symptoms and their functional effects.  *See* SSR 96-7p; *accord* 20 C.F.R. § 404.1529(a) ("We will then determine the extent to which your alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how your symptoms affect your ability to work.").  "Credibility determinations are peculiarly the province of the finder of fact," and I "will not upset

such determinations when supported by substantial evidence." *McGoffin v. Barnhart*, 288 F.3d 1248, 1254 (10th Cir. 2002) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). Credibility findings should nevertheless be "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (quoting *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988)).

I discuss here the ALJ's credibility determination, as the RFC, including the five specific areas Plaintiff raises, is suffused with it. The ALJ found Plaintiff's reports of pain, limitations, and their functional effects "less than fully credible." [AR 16] He began his RFC evaluation by stating that "[i]n making this finding, I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . I have also considered opinion evidence." [AR 13]  Further, "[i]n assessing the claimant's functional capacities, I have considered his subjective reports of pain and limitation and their effect on his ability to work." [AR 16]

The ultimate credibility determination was a corollary from the two findings that Plaintiff "g[ave] evidence which exaggerated or magnified the facts and [his] symptoms," and that Plaintiff's "assertions [were] inconsistent with the [his] conduct." [AR 16-17]  He set forth specific evidence supporting this credibility assessment. [*See* AR 16-17] These included the following: Plaintiff applied for unemployment benefits soon after his alleged onset date, thereby representing that he was capable of full time employment. [AR 17] At the hearing, Plaintiff told the ALJ that he spent up to four hours each day lying down and that he had reported this to his doctors. [AR 44] Yet the record does not support that assertion. [AR 17] The ALJ similarly found that Plaintiff's reported side-effects from medication were not supported by the record. [AR 17] He also noted apparent

18

inconsistencies between Plaintiff's written statements filed with his application for disability and with his testimony regarding his ability to drive and his use of a cane. [AR 17] Plaintiff also testified that he has difficulty concentrating because of his pain, but the ALJ observed Plaintiff throughout the hearing, and he did not demonstrate or manifest any such difficulty. [AR 18]

These are valid reasons for discounting a claimant's credibility. An ALJ may discount a claimant's testimony when the claimant raises new limitations, symptoms, or side effects at the hearing. *See, e.g.*, *Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995) ("The ALJ discredited Mr. Kelley's assertion that he needed a two-hour nap each day, noting his failure to report such a restriction to Dr. Dandridge.").  An ALJ may also discount a claimant's testimony when the claimant's daily activities, other past behaviors, or behavior at the hearing are incongruous with a disabling impairment or his asserted symptoms. *See, e.g.*, *White*, 287 F.3d at 909 ("[T]he ALJ carefully set forth the reasons supporting his negative credibility assessment.  Chief among them, he made clear, were his own observations of Ms. White.  He noted that she appeared to sit comfortably during most of the lengthy administrative hearing and that she seemed to walk without difficulty. He also based his judgment on his review of the medical records as well as Ms. White's own account of her daily activities, finding both to be inconsistent with her complaints of disabling pain. . . . Our independent review of the record reveals that the ALJ adequately supported his credibility determination.").

The evidence above weighs more than a scintilla, making it substantial. *See Richardson*, 402 U.S. at 40.  I will therefore not disturb the credibility determination.  *See McGoffin*, 288 F.3d at 1254; *see also Qualls*, 206 F.3d at 1372 (explaining that an ALJ's credibility evaluation complies with law "[s]o long as the ALJ sets forth the specific evidence he relies on in evaluating the

claimant's credibility").   I now turn to Plaintiff's five specific complaints about the RFC.

### 1. Pain

 Plaintiff argues that the ALJ improperly evaluated his pain by not including any limitations

for it in his RFC assessment other than the limitation that Plaintiff should be allowed to vacillate

between standing and sitting every hour. He contends that the RFC should include additional

accommodations for his pain–for example, additional breaks or extra days off. I disagree.

The Tenth Circuit has recognized numerous factors in addition to medical test results that

agency decision makers should consider when determining the credibility of subjective complaints

of pain. *See Luna v. Bowen*, 834 F.2d 161, 165-66 (10th Cir. 1987).  These include, "a claimant's

persistent attempts to find relief for his pain and his willingness to try any treatment prescribed,

regular use of crutches or a cane, regular contact with a doctor, . . . the claimant's daily activities,

and the dosage, effectiveness, and side effects of medication."  *Id.* (internal citations omitted).

Nevertheless, the regulations prescribe that the ALJ must "consider all of the available evidence"

in evaluating the claimant's reported pain. 20 C.F.R. § 404.1529(a), (c)(1).

The ALJ considered the proper factors when evaluating Plaintiff's reports of pain, and the

RFC accounted for those he deemed credible. He broadly stated that "[i]n assessing the claimant's

functional capacities, *I have considered his subjective reports of pain* and limitation and their effect

on his ability to work . . . ." [AR 16 (emphasis added)] More granularly, he expressly considered the

*Luna* factors. [*See* AR 14 (noting the extended period during which Plaintiff did not seek treatment

for his back); AR 16-17 (discussing Plaintiff's everyday activities and his use of a cane and pain

medication)]  The ALJ also reasoned that several medical imaging results and other diagnostic tests

did not reflect a significant worsening of objective findings in Plaintiff's back. [AR 16] The RFC

reflects that the ALJ discounted much of Plaintiff's subjective reports of pain because he found them "less than fully credible" for reasons presented above.  Although evidence in the record may exist–pertaining to the *Luna* factors or otherwise–that would support an RFC incorporating additional pain limitations, I reiterate that I do not reweigh the evidence or substitute my judgment for the Commissioner's.  *Hamilton*, 961 F.2d at 1498, 1500.  The record contains more than a scintilla of evidence supporting the RFC's inclusion of certain pain complaints and the exclusion of others based on the ALJ's credibility determination.  That evaluation is thus not in error.

### 2. Use of a Cane

Plaintiff next asserts that the ALJ erred by not including a cane option in his RFC.  A hand-held device, such as a cane, is considered medically required if there is "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)."  SSR 96-9p; *see also Staples v. Astrue,* 329 Fed. App'x 189, 191 (10th Cir. 2009).  If the claimant can proffer such evidence, then the cane must be part of the RFC calculation.  *See, e.g., Staples*, 329 Fed. App'x at 191.  The Tenth Circuit has suggested that SSR 96-9p does not require that Plaintiff have a prescription for the cane in order for it to be medically relevant to the calculation of her RFC.  *See id.*

The ALJ did not err by excluding a cane option from Plaintiff's RFC because Plaintiff did not meet his burden of proffering medical documentation establishing the need for it.  While a prescription for the cane would have been sufficient but not necessary, Plaintiff admits he did not have one.  [AR 37] Plaintiff relies on two things in an attempt to satisfy this burden: his own testimony and Dr. Hilty's report.  Per the language in SSR 96-9p, Plaintiff's own testimony does not

21

suffice. Neither does Dr. Hilty's report.  The report mentions the cane in four places: In the physical examination section, Dr. Hilty writes that Plaintiff "was able to walk into room, get up on the table, sit comfortably, and walk comfortably. He does walk with a cane, however." [AR 290]  This statement does not "establish the need" for the cane; it simply describes Dr. Hilty's observation.  It thus does not constitute the requisite documentation.  Likewise, the next two statements in that same section, that Plaintiff's "gait is slow because of the back pain and he uses a cane," [AR 291] and "Assistive Device: Cane," [AR 291] are purely observational, not diagnostic or prescriptive.

The fifth and final reference is the following: "The claimant can walk about 7 minutes at a time *with his cane* and then gets the back pain. . . . So, during an eight-hour workday it would be less than two hours that he could stand and walk, and *he uses a cane for this* of course." [AR 292-93 (emphasis added)] There are two reasons why this statement does not constitute "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed."   The first is the same as the previous statements: these remarks are purely descriptive.  The second is that they were rejected by the ALJ in rendering for the reasons in Part VI.A, *supra*–reasons I concluded were supported by substantial evidence.  Dr. Hilty's report therefore does not provide the necessary medical documentation.  Further buttressing this conclusion is the fact that the use of a cane is notably absent from the report's diagnosis section. [*See* AR 292]  Plaintiff therefore failed to proffer the requisite evidence to have the cane included in his RFC.  Accordingly, the ALJ's RFC was not in error in this regard.

### 3. Side Effects of Prescribed Medication

The tertiary claim of error is that the ALJ failed to incorporate the side-effects of Plaintiff's prescribed medication, specifically his Morphine.  An ALJ must consider the "side effects of any

22

medication that the individual takes or has taken to alleviate pain or other symptoms." SSR 96-7p; *accord* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

Plaintiff testified at the hearing that the Morphine he takes for his back pain makes him "feel loopy and sluggish." [AR 40] The ALJ found that the record did not support this assertion, and, as a corollary, he excluded it from the RFC. This finding stood on three legs: no such complaints were reported by any of the claimant's health professionals; Plaintiff indicated he had no side effects from his medication in a written statement submitted with his application for disability; and Plaintiff gave evidence that exaggerated or magnified the facts and his symptoms. [AR 17]

As Plaintiff argues, and Defendant concedes, it was an error for the ALJ to exclude the side-effects from the RFC on the ground that Plaintiff's testimony was inconsistent with a prior written statement. This is because the written statement is from September 2008, which was two months prior to when Plaintiff began taking Morphine. [AR 175-78] I agree with Defendant, however, that this was a harmless error because the other grounds upon which the ALJ stood for excluding the side-effects from the RFC hold firm.

The only evidence that Plaintiff proffers to prove his side-effects, aside from his own testimony which was discounted for reasons explained *supra*, is this statement in Dr. Weingart's March 2009 treatment notes: "[Plaintiff] is tolerating the MS Contin better than the OxyContin. It is less sedating . . . ." The ALJ concluded this singular statement in Dr. Weingart's notes was an insufficient quantum of evidence to support including the side-effects in the RFC. In my review, I do not reweigh this evidence or substitute my judgment for the Commissioner's. *Hackett*, 395 F.3d at 1172 (internal citations and quotations omitted). Instead I "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability

cases" and ensure the ALJ's conclusions are supported by substantial evidence. *Id.*  To make his determination, the ALJ reviewed the purported side-effects, the extent to which they could reasonably be accepted as consistent with the objective medical evidence and other evidence, the medical record including Dr. Weingart's notes, and opinion evidence. [AR 13,16,17]  He also adjudged the credibility of Plaintiff's statements that the Morphine makes him feel "loopy and sluggish." [AR 16,17]  His decision included a narrative discussion describing why he was excluding the side-effects from the RFC. [AR 17] The ALJ thus comported with the rules of law prescribed to make this evaluation.  *See* SSR 96-8p; *see also* 20 C.F.R. § 404.1529(a).

Plaintiff asserts that  "[the ALJ] has cited no evidence that supports a finding that Morphine does not make [Plaintiff] feel 'loopy and sluggish,' " as he testified. *See* Pl.'s Br. 14.  This is untenable.  The ALJ does cite support for this conclusion: the *lack* of corroborating evidence in the record.  *See, e.g.*, *Elkins v. Astrue*, 2011 WL 6009003, *2 (10th Cir. Dec. 2, 2011) (listing the absence of evidence supporting Plaintiff's claim, which the ALJ relied upon in forming his conclusion, as an adequate basis for discounting a plaintiff's credibility.).  Concluding that "less sedating" is not the same as "loopy and sluggish" is reasonable.  I thus "may not displace the agenc[y's] choice." *See Lax v*, 489 F.3d at 1084.  Furthermore, the ALJ does not have the burden of *disproving* Plaintiff's side-effects.  *See White*, 287 F.3d at 905. The burden falls on Plaintiff to prove them. *Id.*  I conclude that the evidence supporting the ALJ's conclusion on this point is supported by more than a scintilla of evidence and is thus not in error. (Excluding, of course, the inconsistent prior written statement.)

### 4. Obesity

Plaintiff's penultimate argument is that the ALJ did not properly consider the impact that his

obesity has on his other impairments.  Obesity and its effects must be considered when evaluating

a claimants's RFC.  *See* SSR 02-1p (instructing adjudicators to consider the effects of obesity when

assessing an individual's RFC).  The assessment cannot be based on "assumptions about the severity

or functional effects of obesity combined with other impairments."  *Id.* Instead, "each case must be

evaluated based on the information in the case record."  *Id.*

In his decision, the ALJ reviewed the evidence pertaining to Plaintiff's obesity and found

that it reasonably exacerbates his back and knee impairments, based primarily on Dr. McWilliams'

opinion. [AR 16]  Plaintiff, however, homes in on the ALJ's finding that there is "no reason why

[Plaintiff] cannot sit for prolonged periods."  This conclusion stems from the fact that "[n]o treating

or examining medical source has opined any limitations consistent with the claimant's testimony

that he must lie down or recline during the day." [AR 16]

Plaintiff's position is that his testimony and Dr. Hilty's report regarding how long he can sit

without shifting and without pain demonstrates that his obesity affects how long he can sit and, as

a corollary, his RFC. He further contends that the ALJ must support this finding with citations to

the record and that the finding is speculative.

I disagree with Plaintiff for a number of reasons.  Firstly, for the reasons explained in Parts

VI.A and B, *supra*, the ALJ discounted Dr. Hilty's report on this point and discounted Plaintiff's

credibility.  Second, assuming, *arguendo*, the robust veracity of that evidence, it does not

demonstrate that his claimed inability to sit for prolonged periods is exacerbated by his obesity.

Indeed, those pieces of evidence do not even mention Plaintiff's obesity. [*See* AR 42, 293]  They

simply describe how long Plaintiff can sit before shifting and before pain onsets.  Put differently,

they do not attribute these problems to obesity. The ALJ stated that "no treating or examining

physician opined any limitations consistent with [Plaintiff's] testimony that he must lie down or recline during the day." [AR 16] The burden to establish that obesity exacerbates his impairments or other symptoms falls on Plaintiff. *Hawkins*, 113 F.3d at 1164 ("It is beyond dispute that the burden to prove disability in a social security case is on the claimant.") (citing *Hill v. Sullivan*, 924 F.2d 972, 974 (10th Cir. 1991)).  Plaintiff thus cannot rely on the absence of such evidence to prove that his obesity causes or compounds his other problems.  Moreover, without that evidence, an ALJ conclusion that Plaintiff's obesity exacerbates his ability to sit for prolonged period must assume the severity or functional effects of obesity–precisely what Plaintiff correctly asserts that the ALJ *cannot* do.  *See* SSR 02-1p, *and* Pl.'s Br. 14.  This shows that, with respect to the effect of Plaintiff's obesity on his ability to set for prolonged periods, the ALJ's RFC is supported by substantial evidence and is thus not in error.

### 5. Mental Impairments

Plaintiff lastly contends that the ALJ "failed to discuss [his] uncontradicted" depression in evaluating his RFC. Alleged mental impairments must be considered when assessing a claimant's RFC.  *See* 20 C.F.R. § 404.1545(e).  *See, e.g.*, *Salas v. Chater*, 950 F.Supp. 316 (D.N.M. 1996).

The ALJ verily considered Plaintiff's alleged depression-discussing it for two full paragraphs [AR 18]–and his decision to exclude it from the RFC is supported by substantial evidence.  The ALJ relied on the opinion of state agency psychologist Dr. James Wanstrath in excluding depression from the RFC. [AR 18, 217-30]  Dr. Wanstrath reviewed the record and found that Plaintiff had a history of depression, but he opined that the impairment was "not severe"–that it had no more than a minimal effect on Plaintiff's ability to perform basic workplace activities. [AR 217, 227, 229]  The ALJ reviewed Dr. Wanstrath's opinion and found it "consistent with the overall evidence of record

26

including [Plaintiff's] written statements indicat[ing] that he had no problem with concentration."

He also found the opinion "well supported" by Dr. Wanstrath's narrative discussion of the evidence.

[AR 18]  I do not reweigh Dr. Wanstrath's opinion.  *See Hamilton*, 961 F.2d at 1498, 1500.  This

opinion is evidence that a reasonable mind would accept as adequate to support the decision to

exclude depression from the RFC.  *See Teter v. Heckler*, 775 F.2d 1104, 1105 (10th Cir. 1985)

(explaining that substantial evidence "is such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion").  Accordingly, because the ALJ based his decision to exclude

depression from the RFC on such evidence, that decision is not in error.

## VII. CONCLUSION

For the foregoing reasons, I AFFIRM the SSA Commissioner's final order.


Dated: December __9__, 2011, in Denver, Colorado.

BY THE COURT:


___s/Lewis T. Babcock_____
LEWIS T. BABCOCK, JUDGE